## Kittanning Insurance Company, for Use of J. H. McCain, Exr. of John Gilpin, Plff. in Err., v. John Adams et al.

A rule having been taken to dismiss an issue to try the validity of a judgment, it appeared that ten years before, an order had been made granting a rule to show cause why two other judgments against the same defendants should not be opened; that a subsequent order making this rule absolute specified the judgment in question together with the two mentioned in the rule to show cause; that the validity of the issue was recognized in a subsequent order of the court and by the parties in five previous trials of the cause. *Held*, that under the circumstances there was no error in discharging the rule to dismiss the issue and in directing the prothonotary to amend the record by inserting *nunc pro tunc* the judgment in question in the original order to show cause.

(Argued October 10, 1887. Decided October 31, 1887.)

October Term, 1887, No. 5, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas of Armstrong County to review a judgment in favor of the defendants on an issue to test the validity of a confessed judgment. Affirmed.

The names of the parties as they stood on the record of the court below were as follows:

Kittanning Insurance Company, for use of J. H. McCain,

---

NOTE.—But it has been held that an amendment of a rule to show cause why a judgment should not be opened will not be granted, after depositions have been taken and argument, where the effect is to change the cause of action. Taylor v. Neff, 6 Del. Co. Rep. 453, 9 York Legal Record, 5.

Executor of John Gilpin, dec'd, *v.* John Adams, Frank Ambrose, Harvey Dougherty, Jonathan Snyder, and E. A. Mortland.

The facts are stated in the charge of the court. Before the trial the plaintiff moved to dismiss the issue. The motion was as follows:

"And now, to wit: April 20, 1886, plaintiff, by attorneys, moves the court to strike off the issue formed in this case, for the reason that prior to the granting of any rule to show cause to open, and prior to the opening of the judgment, No. 414, September term, 1875, the money had been collected thereon by adversary process, and paid by the defendants to the sheriff on execution No. 130, March term, 1876, on the 14th day of February, 1876, and the sheriff had made return of 'money made as per receipt on back of writ and paid into court $5,250 · debt, $72.50 interest, $6.25 docket costs, in all $5,329.75.' The said judgment, No. 414, has never been opened; no rule to show cause has ever been granted thereon, and the issue is improvidently made; as appears by the record in this case, which is as follows: 'Said judgment was entered on the 20th day of August, 1875, Fieri facias issued thereon on the 25th day of January, 1876, to execution No. 130, March Term, 1876. Levy made thereon January 31, 1876; debt, interest, and costs paid on said fieri facias to the sheriff on the 14th day of February, 1876; same day returned as above.' February 14, 1876, defendants filed petition on three several judgments: Nos. 359, March term, 1875; 414, September term, 1875, and 415, September term, 1875, on which the following order was made same day by the court, *viz.:* 'And now, February 14, 1876, on motion of the attorneys for the defendants (petitioning) rule granted to show cause · why judgments entered to No. 359, March term, 1875, and 415, September term, 1875, should not be opened and defendants let into a defense, all proceedings stayed in the mean time.'

"June 30, 1878, No. 359, March term, 1875, and Nos. 415 and 414, September term, 1875. These rules to show cause why the judgments should not be opened and the petitioners, defendants, let into a defense. The cases came on to be heard on depositions and exhibits the 7th and 8th of May, 1878, and were argued by counsel *c. a. v.* On due consideration the rules

are made absolute and judgments opened to try the questions below stated, etc.

"On execution No. 130, March term, 1876, the following order was made: 'And now, to wit: February 14, 1876, the court orders the money made on this writ to be paid into court and funded until the rules to show cause why the judgments at No. 359, March term, 1875, and 415, September term, 1875, granted this day shall be determined; and if the judgments be opened to remain so funded until the said cases be tried and determined, and until the further order of the court, and subject to such order as the court may make after said cases shall be determined, and the plaintiff in equity shall have the first right to the use of the money if he elects to take.'

"Also, 'and now, to wit: February 16, 1876, the plaintiff in interest has leave to take out of court the money made upon the above-entitled writ upon giving his receipt to repay the same into court with interest when ordered.' "

The court refused to dismiss the issue and filed the following opinion, per WILLIAMS, J.:

We are now asked, as this case is reached for trial for the sixth time, to dispose of the rule granted by Judge BROWN to show cause why the issue in No. 414, of September term, 1875, the case now on the trial list, should not be dismissed. This rule was granted by Judge BROWN, by him made absolute, and subsequently the order making the rule absolute was by him vacated. The rule was thus left without any formal disposition. We have been asked to hear it and dispose of it at this time. We have listened to counsel at whose instance the rule was obtained; and after such reflection as we have been able to give it, we are of the opinion that it is our duty to discharge the rule. It was moved for some ten years after the money was paid to the officer, and the court applied to for the formation of an issue; and although this number is omitted from the order of court granting the rule to show cause, it is embraced in the order making that rule absolute, and is recognized in the subsequent order made in 1880. The parties have recognized this as a valid issue in No. 414, by repeated trials, and under the circumstances as they are disclosed by examination of the records, in addition to dismissing the rule, we direct the prothonotary to amend the records in this case by inserting now as of the

proper date No. 414 of September term, 1875, in the order of this court granting the rule to show cause upon the petition presented to this court on the 14th day of February, 1875. 1

The plaintiff presented the following point:

That under all the evidence in this case, the verdict of the jury should be for the plaintiff.

*Ans.* "We decline to say so, and submit the question to you." 6

The court charged as follows:

At the September term, 1875, and at No. 414, a judgment was entered upon the records of this court, against the defendants here, in favor of the Kittanning Insurance Company for use, no use party being named. In January following a writ of fi. fa. was issued upon that judgment and, as we understand from the evidence, a levy made upon the personal property of some one or more of these defendants. The defendants came, while the writ was in the hands of the officer, into court on the same day on which they paid the money over to the officer upon the writ, and presented their petition to the court, setting out that there were reasons existing why they ought not to pay the money, and asking the court to frame an issue to determine whether, ultimately, they should pay it. That issue was framed about ten years ago. It involves a considerable sum of money, between $5,000 and $6,000, and the interest upon it for in the neighborhood of ten years. It has been before several juries, and comes now to you.

The legal questions that were in this case have been substantially settled, as we think, by the supreme court. The only open questions, therefore, are questions of fact, for your determination. It is our duty to try to get your attention upon those questions, to present them to you as fairly as we are able, and then leave you to determine them, upon your own consciences and judgments.

In presenting to you these questions, it will be helpful to look first at what may be regarded as not in controversy in this case. A very large portion of the testimony which you have before you relates to subjects which are not seriously controverted. [There is no doubt but the signatures of these defendants were obtained to the note on which this judgment was entered, by B. Heydrick, upon the pretense that the note was

to be used to renew another obligation of theirs, that was outstanding. So far as the defendants are concerned it was, therefore, without consideration. There is no doubt, under the evidence, that Heydrick used it in an entirely different way from that which he represented to the defendants it was to be used. That he imposed upon them and defrauded them and misappropriated this note, there is no controversy.] 2

[There is no doubt, under the evidence, that this note came, some time in the fall of 1875, into the hands of Foster or the bank at East Brady, of which he was cashier. According to the testimony of the bookkeeper of the bank, it was actually discounted by the bank on the first of September, 1875. It had been, at that time, entered as a judgment upon the records of this court, some two weeks. Under the evidence of Heydrick and of Bredin, the bookkeeper of this bank, it appears very clearly that this note, if taken by the bank, was taken at a grossly usurious rate, a circumstance which, however, is perhaps of very little consequence; for the character of the paper is such that, as we think, the holders of it from Heydrick took it subject to all the original equities growing out of the circumstances under which it was given.

Notes, as the counsel have stated in addressing you, are of two sorts: those that are known as negotiable or commercial, which pass from hand to hand, and those not negotiable that pass by assignment. A simple bank note negotiated before it is due goes into the hands of the one who pays value for it, as a valid obligation against the maker, although he may have been imposed upon at the time his signature was obtained. But if an instrument is not negotiable, if it is, in other words, a judgment bond, or contains a warrant of attorney confessing judgment, it does not pass by delivery or indorsement so as to prevent inquiry into the original equities. The note in this case was printed upon a half sheet of paper; a blank was left for the signatures; and immediately under it was printed a very full power of attorney, embodying waivers of the laws exempting property from levy and sale, and stipulations in reference to commission of attorney for collection, and other stipulations. These two papers passed together, and, as we have stated, a judgment was actually entered upon this instrument some ten or twelve days before, according to the testimony of the bookkeeper of this bank, it became the property of the bank. We say, there-

fore, as we suggested a moment since, that no matter how much Foster gave for this note, or how much the bank at East Brady gave for it, they took it subject to the original equities subsisting between the makers of the note and Heydrick. When this bank passed it to Gilpin, Gilpin took it in the same way, if he took it simply as an assignee. And the same defense could be made against him that could have been made by the makers against Heydrick, if Heydrick himself had been upon the record. So far there is, we desire to say to you, no real controversy in this case.] 3

[When Mr. Gilpin calls upon the defendants to pay this note, and they seek to set up the original equities subsisting as between themselves and Heydrick, he replies to them that they are estopped from setting up the equities whatever they may be as between themselves and Heydrick; that because they have been the means of his investing money in this judgment, they are now estopped from setting up, even truthfully, the circumstances of any fraud that would prevent Heydrick from recovering, if he were the plaintiff. This raises, as the jury will see, two questions of fact: first, Is Gilpin a purchaser actually paying value for this judgment? Because, if he is not, he certainly has no right whatever to object to this defense, and the case may be regarded as standing in all respects precisely as though the bank at East Brady, or J. Y. Foster, were the plaintiff, or Heydrick himself; the other question is whether Gilpin, if he became the purchaser of this note or judgment, became such upon the faith of the written paper which has been given in evidence, signed by the defendants, and spoken of as the certificate of no defense. Now this is where the ground of the controversy is, and it is only to these questions that we desire particularly to call your attention; and as the evidence relating to both is substantially the same we will call your attention to them together.] 4

On the part of the plaintiff this certificate is produced and read; the defendants there state that this judgment is valid, and that they have no defense to it. If a person without knowledge becomes the purchaser of a judgment upon an exhibition to him of such a certificate, he acquires title and has the right, when the defendants seek to set up the original equities, if any exist, against him, to reply to them that it is inequitable, after having induced him to invest in the purchase of it, to defeat it

in his hands.   The estoppel rests, as the counsel have said, upon the plain practical proposition that when one of two parties must suffer a loss it ought to be sustained or suffered by him whose act or negligence has occasioned it.   If, therefore, one who has a good defense is so foolish as to deny that he has a defense, and induces you or any of his neighbors to become the purchaser of an obligation of his, upon such representation, he and not you ought to be the loser.   Although he may have a perfectly good defense, yet if he has induced his neighbor to become the purchaser of his obligation by representing that he has no defense, in equity his mouth is closed and he is estopped from telling even the truth about the transaction.

Now this is the position in which the plaintiff alleges the defendants are in this case.   It is important that the jury should have their attention closely and carefully upon this question, which we now submit to them.   The paper has been placed before you, and the execution of it is not controverted.   It is our duty to say to you that if you believe from the evidence that Gilpin bought this judgment on the strength of that certificate, he has a good title to it; and no matter how great a wrong is suffered by these defendants, they must put up with it; because in that event the certificate they themselves signed would close their mouths.   But they say you ought not to regard them as bound by it, for certain reasons to which we call your attention.

[They say in the first place—and the evidence in the case shows very clearly that such is the fact—that Gilpin was the attorney of the preceding holders of this judgment; it was entered by him in the August before, as we have stated; according to the testimony of the bookkeeper of the bank, the bank acquired it.   He was attorney for Foster and the bank of which Foster was cashier.   About that there is no controversy whatever.   Foster, and the president of this bank, Abrams, appear, according to the evidence, to have visited him with a view to secure negotiation of this judgment and they presented to him, or one of them presented to him, a request to Mr. Foster to extend the time, signed by the defendants, and according to the testimony, Mr. Gilpin said to him, "that is not sufficient, this judgment cannot be negotiated upon it," and then dictated a paper which was subsequently copied by Foster, and we have the original paper so dictated, produced here by the plaintiffs. The connection, therefore, of Gilpin with the previous holders

of this judgment and his connection with the certificate itself, are circumstances to be taken into consideration in determining this question.

Then the transaction itself is to be looked at. Foster was in the office of Gilpin for the purpose of procuring a negotiation of this judgment. Gilpin went into the next room occupied by Mr. Lee and offered him the judgment at 12 per cent discount, which the jury will see was $600, from its face. Mr. Lee declined taking it and said that it had been offered to him at a great deal larger rate of discount, and that it might possibly result in litigation. This certificate was then produced or spoken of, and in the course of the conversation Mr. Lee suggested to Mr. Gilpin, "Why don't you take it yourself?" During that same afternoon, as I understand Mr. Lee's testimony, Gilpin came back into his office and borrowed from him the money necessary to take an assignment of this judgment, and alleges that after offering to sell it for $4,400, he paid par for it. The judgment draws 6 per cent interest. He alleges that he borrowed the money with which to pay for the assignment, and agreed to pay 8 per cent interest; and the evidence of the payment four months later, by his checks, is before the jury.

These circumstances, which give complexion to the transaction, are before you: the relation of Mr. Gilpin to the parties, to the judgment, to the certificate, the transaction itself, the facts of the loan of the money, the alleged price paid, all the circumstances disclosed by the evidence transpiring in the office of Mr. Lee, when he said this assignment was made, and in addition the fact that when this assignment was drawn the name of the assignee was left out of it, and according to the testimony of Mr. Lee inserted in a different ink, at that time, the evidence does not show. Now, from these circumstances and from the testimony of Mr. Gilpin, who says that he bought this judgment and paid for it, and who says that he did himself subsequently insert the name of Mr. Lee in the assignment for the purpose of securing him, you are to determine whether Gilpin actually bought this judgment and paid for it in good faith; whether that was a fair business transaction, and was induced by the faith which Gilpin put in the certificate signed by the defendants presented on that occasion and previously drawn under his dictation, or whether he was acting as the agent or attorney of this bank or Foster. Was this a device to enable the bank

or Foster to raise money temporarily or to place this judgment in a position where its collection could be better enforced? Now we have drawn your attention to the evidence from which this question should be determined.] 5 . . .

If from all the evidence you believe that Gilpin is not a bona fide holder of the judgment, by reason of faith reposed by him in the certificate signed by these defendants, then he ought not to recover. If, on the other hand, you believe that he is a purchaser of that judgment in good faith and that he took it because he believed that the defendants had no set-off or defense as represented in the certificate signed by them, then the verdict should be in favor of the plaintiff.

Verdict and judgment for defendants.

The assignments of error specified, (1) the disallowance of plaintiff's motion to dismiss the issue; (2-5) the portions of the charge inclosed within brackets; and (6) the answer to plaintiff's point.

*J. M. Hunter* and *M. F. Leason,* for plaintiff in error.—It is of the utmost importance that there should be an end of a suit at law, and the end is execution. There is no writ of restitution following a fieri facias regularly issued on a judgment unappealed from. Money collected or paid upon lawful process of execution cannot be recovered back, although not justly or lawfully due by the defendant in the execution to the plaintiff. Federal Ins. Co. v. Robinson, 82 Pa. 359; Boas v. Updegrove, 5 Pa. 516, 47 Am. Dec. 425; Paxson's Appeal, 49 Pa. 199; Douglass's Appeal, 48 Pa. 225; Rice v. Groff, 58 Pa. 118.

It is immaterial whether the plaintiff ever receives the money or not so far as the defendant is concerned. The law undoubtedly is that a sheriff's return is conclusive only in the cases in which they were made, and upon privies. Paxson's Appeal, 49 Pa. 199; Freeman v. Caldwell, 10 Watts, 11; Hunt v. Breading, 12 Serg. & R. 41, 14 Am. Dec. 695.

The sheriff's return in the present case is, therefore, conclusive that the money has been collected by the sheriff from the defendants in full; and in law this satisfies the judgment.

The question to be determined is, has the judgment been satisfied? The marking of a judgment "satisfied" without the payment of any money, and a new note being given in lieu

thereof, has been held a bar to the defense of usury. Montague v. McDowell, 99 Pa. 269.

A satisfaction of a judgment, if procured by fair means, and in a legal way, is conclusive; and the defendant cannot recover usury contained in said judgment. Ibid.; Hopkins v. West, 83 Pa. 109.

If the defendant has paid to the sheriff more money than is necessary to satisfy the judgment he may have it awarded to him on distribution; but beyond that he can have no claim on the fund, and the court has no power to open a judgment after the defendant has paid it.

A fair submission of the case required that all the questions of fact should be given to the jury, and not that one or two should be singled out and the rest suppressed.

The whole case, as read from the papers, shows an ordinary business transaction. On the 21st day of July, 1875, J. Y. Foster discounted No. 414 for B. Heydrick and paid him $4,800, which would be a discount of $200. The charge of the court stigmatizes it as a "grossly usurious rate." Now the discount for four months at 12 per cent is $200, which is not an unusual rate. It is not so grossly usurious that a jury would be justified in finding fraud in either Foster or Heydrick; and to say so, we think, was error. It was a fact, if true, to be found by the jury and not determined by the court.

This case exemplifies the danger of permitting written instruments to be overthrown by parol testimony, unless it is clear, precise, indubitable, and positive.

These test words are a very slim barrier when given to a jury as criteria by which to try evidence. Mead v. Conroe, 113 Pa. 220, 8 Atl. 374; Morton v. Weaver, 99 Pa. 52.

*E. S. Golden, Charles McCandless, H. L. Golden,* and *David Barclay,* for defendants in error.—The plaintiff insists that the court has no power to open a judgment when the money raised by an execution thereon is in court awaiting distribution. The money was not in court for distribution; but there to await the final decree of the law upon the equities between the parties and the justice of the case. This is the uniform practice of the court in all similar cases. And it is to be observed that before the money was paid to the sheriff the defendants had prepared their application to restrain the execution. The plaintiff denies

that fact. The denial is an admission of the power of the court to open the judgment had the money not been made by the sheriff. But how can the mere fact of the sheriff making the money, even by the actual levy and sale of the defendant's property, affect the power of the court? It cannot, in a jot or tittle; for the law invests the court with plenary power over its own judgments and its processes, until the money actually reaches the hands of the plaintiff, unchallenged. *Re* Dyott, 2 Watts & S. 557; Leeds v. Bender, 6 Watts & S. 315; Carlisle Bank v. Barnett, 3 Watts & S. 248; Troutman's Appeal, 23 Pa. 494; Lowber's Appeal, 8 Watts & S. 390, 42 Am. Dec. 302; Bank of Pennsylvania v. Winger, 1 Rawle, 301, 18 Am. Dec. 633; Susquehanna Mut. F. Ins. Co.'s Appeal, 105 Pa. 615.

The foregoing cases show that while the money is in court and not presently available to the plaintiff, the judgment is not satisfied, that the court will retain control over both the money and the judgment; and it is not too late for the court to afford relief to the defendant by entertaining his application to have the judgment opened.

The case of Federal Ins. Co. v. Robinson, 82 Pa. 359, relied on by the plaintiff in error, decides that the remedy of the defendant is an application to the court to open the judgment, and not an independent action to recover money paid as usurious interest, the payment of which was made upon process of execution. See also Boas v. Updegrove, 5 Pa. 516, 47 Am. Dec. 425.

The request to strike off the issue came after the fifth trial of the case, and after the plaintiff had received the money pursuant to the order of the court, and, in every respect acquiesced in the order of opening the judgment and in the issue. This was too late. Breden v. Gilliland, 67 Pa. 34.

The third specification under the first assignment is to the action of the court in its order of September 28, 1886, directing an amendment, *nunc pro tunc,* to the order of the court granting the rule to show cause upon the petition presented to the court February 14, 1875. The amendment was made in the interest of justice. It tended to suppress a mere technical defense that it was attempted to set up. The court had the power to make the order; and that its action in doing so was eminently proper cannot be doubted. It is a matter, however, not reviewable in this court. *Re* Sheppard's Contested Election, 77 Pa. 295; Brown v. Com. 78 Pa. 122; Fitzgerald v. Stewart, 53 Pa. 343.

PER CURIAM:

The judgment in this case must be affirmed. The case was well tried in the court below; and, notwithstanding the able argument of the learned counsel for the plaintiff in error, we cannot agree to sustain any of the exceptions.

The judgment is affirmed.